SiNNOTT, Judge,
delivered the opinion of the court:
During the calendar year 1918 the plaintiff paid to Charles «T. Kreamer, its president, and to August Kreamer, its vice president, $100 a week each, aggregating $10,400. During the year 1919 it paid to each of these two officers similar amounts. During the year 1920 it paid to each of them $150 a week.
The plaintiff claims that these amounts so paid are deductible from its gross income, in determining its net income, under sec. 234 (a) (1) of the revenue act of 1918, 40 Stat. 1077, as compensation for services rendered for the purpose of computing its liability for income and profits taxes for each of the said years. The defendant claims that the said amounts were paid to these officers as and for dividends declared by it upon its capital stock.
*314 The provision of the act of 1918, involved herein, is as follows:
“Sec. 234 (a). That in computing the net income of a corporation subject to the tax imposed by sec. 230 there shall be allowed as deductions:
“(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered, * *
Plaintiff corporation’s business was originally the prop-ery of A. Kreamer. He died leaving this business to his two sons, above mentioned, who conducted it as a partnership. On the partnership’s meeting financial difficulties, the Manufacturers’ Trust Company, the executor of the father’s will and a creditor of the partnership, intervened in order to protect the estate and its loans. The trust company caused the business to be incorporated, dividing the two thousand shares of stock, of a par value of $100 per share, equally between the two sons. It made additional loans to the new corporation. These loans were secured by a pledge of the sons’ stock to the trust company. Three representatives of the trust company were elected to the board of directors; they, together with the two Kreamers, constituted the entire membership. The sons were elected to the presidency and vice presidency, respectively. The secretary of the trust company was made secretary of the plaintiff company, and also was one of the three representatives of the trust company on the board of directors.
The two Kreamers assumed active charge and gave their entire time to the details of purchase, manufacture, and sale. The trust company, through its representatives, controlled and directed the general policies and finances of the business.
The sums paid the two Kreamers weekly as aforesaid were by virtue of resolutions of the board of directors, which provided that said sums should be paid “ for such services as they may be required to render to the corporation, to be payable out of any surplus profits and to be charged against their dividend accounts, if any.”
*315 The trust company explains this plan of payment by the statement that it could obtain a firmer grasp over the financial affairs of the corporation by this method in that these two officers were made to feel that the weekly payments were a part of the dividend, if declared, rather than a part of the corporation’s income; and, further, that this plan would enable it to curb the demand for increased salaries on the part of these two officers.
The weekly payments to the two Kreamers, by direction of the trust company, were carried in a loan account, and not in a salary account. Notes were not required from the Kreamers to evidence these payments as loans. Neither the Kreamers nor the trust company expected that any part of these moneys would voluntarily be returned to the company in the event that the dividends authorized were not sufficient to cover the payments made to the Kreamers.
An 8% dividend amounting to $16,000.00 was declared for 1918; 12%, or $24,000.00, for 1919; and 10%, or $20,-000.00, for 1920. When these dividends were declared, there was not enough money on hand to take care of the full payment of the dividends in the amounts declared. However, there was enough to pay the difference between the •declared dividends and the total of the payments to the Kreamers. At the time these dividends were declared checks to the full amount of such dividends were made out by the company payable in equal shares to the Kreamers and delivered to the trust company. The Kreamers appeared at the trust company, endorsed the checks, and received an amount in cash equal to the difference between what they had received during the year and the amount of their dividend check for that year.
It is apparent to us that the sums paid to the Kreamers were for their services, and not dividends. They assumed active .charge of and gave their entire time to certain details of the business. It was not to be expected that they were to donate their services. The resolutions specifically provide that the sums paid were to be for their services. The provision in the resolution that the sums were to be charged against their dividend accounts is explained by the trust com *316 pany on the ground that it would give the trust company a firmer grasp over the financial affairs of the corporation, and a curb on the demands of the two Kreamers for an increase in salaries.
While the bookkeeper carried the weekly sums paid to the Kreamers as a loan account, this fact is not conclusive. No notes were required of the two Kreamers. Neither did they nor the trust company expect any of these moneys voluntarily to be returned to the company in case the dividends were not sufficient to cover these payments. Charles J. Kreamer, the president, disclaimed any knowledge of the method by which the books were kept.
Plaintiff is not foreclosed by its bookkeeping entries from showing the real facts of the transaction.
“ The fact that this item was not properly treated on its books does not foreclose the taxpayer’s right to deduct it from income, since the books are merely prima facie evidence of the character of the charge.” Henry Myer Thread, Manufacturing Co., 2 B. T. A. 665, 666.
“ There is no question of good faith in regard to these entries; but it is well at the outset to realize that in this case the rights of the parties can neither be established nor impaired by the bookkeeping methods employed, or by the names given to the various items.” Douglas v. Edwards, 298 Fed. 234.
“ The fact that these amounts were not classified on the books as salaries is immaterial. They were paid as compensation for services.” Osborne & Clark Lumber Co., 8 B. T. A. 382, 383.
Mr. Shelton, vice president of the Manufacturers’ Trust Company, who, during the years in question, was secretary and treasurer and also director of the plaintiff corporation,, testified that the amounts paid to the Kreamers were reasonable amounts. The defendant offered no evidence to show that the amounts were not reasonable.
The plaintiff is entitled to recover. It is so ordered and adjudged.
GeeeN, Judge; Moss, Judge; Graham, Judge; and Booth,. Chief Justice, concur.